UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PHILLIP WRIGHT; WRIGHTSHOT, INC.;
and TMT ARKANSAS, INC.                                                                        PLAINTIFFS

v.                                            No. 5:22-cv-05241

JOHN BALDWIN                                                                                     DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant's Motion (Doc. 6) to dismiss for failure to state a claim, Plaintiffs' response (Doc. 9) in opposition, Defendant's reply (Doc. 16) to Plaintiffs' response, and Plaintiffs' surreply (Doc. 17). For the reasons stated below, Defendant's motion will be GRANTED IN PART AND DENIED IN PART.

**I.   Background**

This contract dispute arose from the sale of TMT Arkansas ("TMT") to Phillip Wright by John Baldwin. (Doc. 3, pp. 1–2). Under Wright and Baldwin's purchase agreement (Doc. 3-A) ("the Agreement"), Baldwin was to leave $75,000 plus the amount of TMT's outstanding checks in TMT's bank account. *Id.* at 3. Plaintiffs also allege that TMT's physical assets were to be transferred as part of the sale. (Doc. 3, p. 2). At the time of sale, however, Plaintiffs allege that Baldwin left only $33,376.19 in TMT's bank account, well short of the $209,574.30 needed to cover all outstanding payables and have $75,000 left over. *Id.* Plaintiffs also claim that Baldwin took or otherwise disposed of physical TMT assets worth a total of $81,057.50. *Id.* at 3.

The Agreement provides as follows:

Section 7.01. Survival. The parties to this Agreement intend to limit and modify by contract the statute of limitations that otherwise apply [sic] to this Agreement. Accordingly, all representations and warranties made by the Parties in this Agreement and any other Transaction Documents shall survive Closing and shall remain in full force and effect until the date that is one (1) year after the Closing

1

> Date; *provided, however,* that the Lease Agreement and the representations and warranties made by the Parties therein shall remain in full force and effect in accordance with its and their terms and conditions. None of the covenants or other agreements contained in this Agreement shall survive the Closing Date other than those which by their terms contemplate performance after the Closing Date, and each such surviving covenant and agreement contained herein or in the other Transaction Documents to be performed in whole or in part after Closing shall survive Closing in accordance with their terms or, if not specified, indefinitely.

(Doc. 3-A, p. 8). Baldwin has moved to dismiss on the basis of Section 7.01. (Doc. 6, p. 2). He cites the second sentence of the provision to argue that there is a one-year statute of limitations governing any claims under the agreement. *Id.* Because the sale closed on September 26, 2021, Baldwin claims that Plaintiffs had to bring suit by September 26, 2022. (Doc. 7, p. 3). Because Plaintiffs filed their suit on November 17, 2022, Baldwin claims the suit is barred. *Id.*

Plaintiffs, for their part, argue that the contract makes a distinction between a "representation or warranty" on the one hand and a "covenant, agreement or obligation to be performed" on the other hand. (Doc. 9, p. 3). They point out that the two subsequent sections, 7.02 and 7.03, each have an "(a)" subsection discussing "representations and warranties" and a "(b)" subsection discussing "any covenant, agreement or obligation." *Id.*; Doc. 3-A, pp. 8–9. They characterize their claim as arising from a breach of "covenants, agreements and obligations." (Doc. 9, p. 4). In the alternative, they characterize the one-year limitations period as "unreasonably short." *Id.* at 5. Arkansas courts will not enforce an "unreasonably short" limitations period. *City of Hot Springs v. National Sur. Co.*, 531 S.W.2d 8, 10 (Ark. 1975).

Baldwin argues that even if Plaintiffs' distinction is given force, Plaintiffs could not recover for the $81,057.50 in missing assets. (Doc. 13, p. 4). He points out that these items were incorporated into the Agreement by virtue of being included in a tax document that was part of the financial information provided with the Agreement. Section 3.02 of the Agreement contains the following passage: "Seller represents, that to the best of Seller's knowledge, the Financial

Information presents a reasonable view in all material respects of the financial position of the Company as of and at the periods specified therein and the results of operations of the Company for the period specified therein." (Doc. 3-A, p. 9) (emphasis deleted). Therefore, Baldwin argues that the absence of the assets was a breach of a representation subject to the one-year statute of limitations. (Doc. 13, p. 4).

**II.     Analysis**

The Agreement states that it is governed by Arkansas contract law. (Doc. 3-A, p. 15). In Arkansas, "[w]hen contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed." *Fryer v. Boyett*, 978 S.W.2d 304, 306 (Ark. 1998). If there is doubt or uncertainty as to the meaning of contractual language and the language can be fairly interpreted in more than one equally reasonable way, the language is ambiguous. *Tri-Eagle Enters. v. Regions Bank*, 373 S.W.3d 399, 403 (Ark. Ct. App. 2010). If the ambiguity can be resolved by reference to the contract language itself, the court may interpret an ambiguous contract as a matter of law. *Id.*

Section 7.01 does not appear ambiguous on its face. The provision states the intent of the parties to modify the applicable statute of limitations. It then provides that (1) representations and warranties in the Agreement will survive for 1 year after the closing, (2) a separate Lease Agreement and the representations and warranties therein will survive as provided by the terms of the Lease Agreement, and (3) no "covenants or other agreements" in the main Agreement will survive the closing unless the nature of the covenant or agreement requires otherwise. This language indicates that "representations and warranties" are a separate category of content, with a separate statute of limitations, from "covenants or other agreements." The fact that

"representations and warranties" are treated separately from "any covenant, agreement, or obligation" in the two subsequent sections also reinforces this reading. "Different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible." *First Nat'l Bank of Crossett v. Griffin*, 832 S.W.2d 816, 819 (Ark. 1992) (quoting *Continental Casualty Co. v. Davidson*, 463 S.W.2d 652, 655 (Ark. 1971)). Finally, the Agreement provides that no "representations or warranties" are made by the seller outside of Article III. (Doc. 3-A, p. 5). If all commitments under the contract were representations or warranties, the seller would have no obligation to deliver the stock certificates to the buyer (Article II, § 2.04), and the noncompete clause binding the seller would be a nullity given its location (Article VIII, § 8.01).

Baldwin urges that the structure of 7.01's first two sentences creates a uniform 1-year statute of limitations. Specifically, he argues that the use of the word "Accordingly" at the beginning of the second sentence means that the second sentence carries out the object of the parties stated in the first sentence; that is, to curtail the statute of limitations. But Baldwin offers no argument as to why the second sentence alone needs to convey the parties' entire intent as to any statute of limitation where the third sentence clearly modifies the statute of limitations as well.

Baldwin also points out that, if Plaintiffs' preferred reading is adopted, Plaintiffs are in worse shape. Indeed, under the Agreement's terms, covenants and agreements did not survive closing. But Arkansas law provides that an "unreasonably short" limitation is void as against public policy. *City of Hot Springs*, 531 S.W.2d at 10. "A period of time so short as to amount to an abrogation of the right of action would be unreasonable." *Id.* Because Plaintiffs could not personally access TMT's bank accounts or physical inventory prior to closing, an inability to sue post-closing for any deficiencies would abrogate Plaintiffs' right to sue entirely.

Therefore, the Court finds that Section 7.01 unambiguously distinguishes between "representations and warranties," with a 1-year limitation, and "covenant[s] or agreement[s]," which do not survive closing. The Court also finds that the nonexistent period in which to sue for a breach of "covenant or agreement" is "unreasonably short" and therefore void under Arkansas law. Arkansas has a five-year statute of limitations for "enforce[ing] written obligations, duties, or rights." Ark. Code. Ann. § 16-56-111(a). Accordingly, any of Plaintiffs' contract claims based on a "covenant or agreement" may proceed.

### a. The Bank Account

Section 2.06 of the Agreement provides that:

"Notwithstanding anything to the contrary set forth in this Agreement, prior to Closing, the Company shall have distributed and assigned to Seller . . . all cash from the bank account(s) of the Company other than $75,000.00 plus the amount of any outstanding checks of the Company, which shall remain in the bank account(s) of the Company at Closing."

(Doc. 3-A, p. 3). The key word in this provision is "shall." Throughout the Agreement, "shall" is used to create conditions and set obligations, indicative of covenants or agreements. *See* Doc. 3-A at 1 ("The aggregate purchase price for the Shares *shall* be $2,000,000"), 2 ("Seller *shall* deliver, or cause to be delivered, to Buyer: stock certificates), 6 ("Seller *shall* have the right"), 7 ("Seller *shall* have duly performed and complied in all material respects with all agreements), 8 ("all representations and warranties . . . *shall* survive closing and *shall* remain in full force [for 1 year]") (emphasis added). Representations and warranties, by contrast, are specifically noted as such in the Agreement. *See id.* at 3 ("Seller *represents and warrants* that the statements contained in this Article III are true and correct as of the date hereof), 5 (same for Buyer). Additionally, Section 3.12 provides that no representations or warranties have been made by the seller outside of Article III of the Agreement. *Id.* at 5. The bank account provision is in Article II.

Based on the Agreement's text and structure, the Court finds that leaving the specified funds in TMT's bank account was a "covenant or agreement" under Section 7.01. Because the applicable limitations period for covenants and agreements is unconscionably short under Arkansas law, the Court will not enforce it and the five-year statute of limitations applies. Accordingly, Plaintiffs have timely filed their cause of action as to the funds in the bank account.

### b. The Physical Assets

The contract claim over the physical assets in this matter, by contrast, is subject to the one-year limitations period for representations and warranties. The Agreement does not mention transfer of the physical assets, presumably because they were held by TMT and not Baldwin personally. Therefore, any statement Baldwin made as to what TMT's assets would be at closing was a "representation or warranty" falling under the 1-year limitations period. One year after closing to determine whether a midsized business is missing significant physical assets is not such a short period as to abrogate the right to sue. Therefore, the 1-year limitations period is enforceable under *City of Hot Springs*.

Plaintiffs argue that they sought indemnity from Baldwin under the Agreement's procedures well before the 1-year period elapsed. (Doc. 9, p. 4). If true, this could possibly constitute a breach of the "covenant or agreement" to indemnify. However, the complaint does not mention Plaintiffs' attempts to seek indemnity. To survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). Because the complaint alleges no factual matter supporting the breach of a duty to indemnify, Plaintiffs' contract claim as to the physical assets is based on a

"representation or warranty" and should have been brought within the 1-year limitations period. Because it was not, dismissal is proper.

### III. Conversion Claims

Besides their contract claims, Plaintiffs also claim conversion as to both the missing funds and the missing assets. (Doc. 3, pp. 3–4.) "Conversion is a common-law *tort* for the wrongful possession or disposition of another's property." *McQuillan v. Mercedes-Benz Credit Corp.*, 961 S.W.2d 729, 732 (Ark. 1998) (emphasis added). Conversion cases, even those entangled in contract disputes, are distinct causes of action. *See Mercedes-Benz Credit Corp. v. Morgan*, 850 S.W.2d 297, 300 (Ark. 1993) (explaining that conversion claims often lie in cases of wrongful repossession). Baldwin has not briefed, and therefore this Court does not address, the applicability of the contractual limitations periods to the related tort claims. Accordingly, the conversion claims remain for trial.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion (Doc. 6) is GRANTED IN PART AND DENIED IN PART. Plaintiffs' breach of contract claim based on a representation or warranty as to the physical assets is DISMISSED WITH PREJUDICE.[1] Plaintiffs' breach of contract claim for failure to leave the specified funds in TMT's account, as well as Plaintiffs' conversion claims, remain for trial.

IT IS SO ORDERED this 7th day of March, 2023.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE

---

[1]To be clear, this does not preclude Plaintiffs from filing an amended complaint alleging a breach of Baldwin's agreement to indemnify Plaintiffs for the missing assets.